Hon. Robert H. Pouch Formal Opinion Secretary No. 95-F2 Board of Commissioners of Pilots of the State of New York 17 Battery Place New York, N Y 10004-1207
Dear Secretary Pouch:
You have asked whether the Board of Commissioners of Pilots has the authority to proceed against the license of a State-licensed Hudson River pilot for actions taken while he was acting as a docking master and, therefore, not acting under the auspices of his State license.
You have advised that, upon the complaint of a State-licensed pilot, the Board investigated an incident involving a ship leaving its terminal in the Arthur Kill and heading to sea through the Port of New York/New Jersey. The Board concluded that the docking master directed the ship to leave the terminal, over the objection of the pilot, in circumstances where a "prudent pilot would not commence an outbound passage".[1] You ask whether the Board may consider this finding as a basis for suspending or revoking the pilot's Hudson River license. While the Board does not license or regulate docking masters, it does license and regulate Hudson River Pilots. Similarly, the Federal government does not separately license docking masters, who supervise intraport movements, often with a tug in attendance. Many docking masters do have a Federal pilot's license.
The Federal government regulates pilotage of vessels on the Great Lakes and American flag vessels sailing between American ports.46 U.S.C. § 8502, 9302. The states have authority over the pilotage of American vessels sailing under register, that is, engaged in foreign trade and all foreign flag vessels. See, 46 U.S.C. § 8501. New York has exercised this authority through enactment of its Navigation Law. The Navigation Law authorizes the Board to license pilots for Long Island Sound and Block Island Sound (§ 91-6); the port of New York by way of Sandy Hook, Sands Point or Execution Rocks (§ 90); and a specified portion of the Hudson River (§ 91-a).
The Navigation Law establishes licensing standards. It provides:
 It shall be the duty of the commissioners, before they shall grant a license to any person applying therefor, to call such applicant before them, within one month thereafter, and in the presence of one or more pilots licensed for the waters regarding which such applicant seeks to be examined, who shall be notified to attend, examine such applicant or cause him to be examined, with relation to his qualifications for the office of pilot. In case of the nonattendance of any licensed pilot so notified, the examination may be conducted in his absence. Each applicant shall be examined in particular touching his knowledge of the tides, soundings, bearings and distances of the several shoals, rocks, bars and points of land and night lights in the navigation for which he applies for a license to act as a pilot, and also touching any other matter relating thereto which the commissioners may deem proper. If upon the examination the person so applying shall be found to be of good moral character and temperate habits, and possessed of sufficient ability, skill and experience, the commissioners may grant him a license.
Id., § 92. The Board's regulations establish training requirements and provide that every license applicant shall take a written examination prescribed by the Board before appearing for oral examination. 21 NYCRR 52.3
(a). The term of each license issued by the Board is one year.21 NYCRR 52.5. A pilot who wishes to renew a license must appear before the Board in person not more than thirty days before the license expires. 21 NYCRR 52.10. The pilot must submit a memorandum describing his or her work during the past year and may be required to pass an examination prescribed by the Board. Id.
The Board regulates piloting practices to reduce the possibility of marine disasters such as collisions and pollution caused by oil spills. It imposes the requirements discussed above to ensure that the State-licensed pilots charged with responsibility for safety are qualified by high levels of training and experience. See, 21 NYCRR 50.5
and 21 NYCRR Part 51. The licensing criteria are permeated by requirements of skill, experience and judgment for license applicants and the Board has broad examination authority. The brevity of the license period, which provides for yearly re-evaluation, indicates the concern that pilots maintain their high level of performance and expertise in order to ensure safe operation of the ships they pilot.
The Navigation Law empowers the Board to suspend or revoke licenses. The statute provides in part:
 a. The commissioners may suspend any pilot licensed under this article at any time for any period they may deem proper, and may revoke and annul any license which shall have been granted upon satisfactory proof of negligence, carelessness, wilful dereliction of duty, or wilful disobedience by such pilot of any lawful rule or regulation duly made and promulgated by the commissioners. The pilot so suspended, at any time, upon due notice, may appeal to the commissioners for a re-hearing of his case, and such commissioners shall have power to confirm or reverse the previous decision.
Navigation Law § 94(2).
Thus, the Board has broad general authority to suspend or revoke licenses in circumstances where pilots fail to adhere to the criteria under which the license was granted. As discussed above, in order to obtain a license, a pilot must demonstrate that he has sufficient ability, skill and experience to exercise the judgment needed to pilot ships safely. The incident you describe bears directly upon the docking master's judgment and his ability to pilot ships safely. This is evident in your determination that a prudent pilot would not have commenced an outbound passage in the circumstances.
Under the pilot licensing criteria, this incident involving the pilot's activities as a docking master could have been taken into consideration in deciding whether to grant a license. The incident bore directly on the pilot's judgment, the soundness of his decision making as a pilot, and his ability to pilot ships safely. The Board has specific statutory authority to consider charges of negligence or carelessness in determining whether to suspend or revoke a pilot's license. While the actions in issue did not occur while the individual was acting as a pilot, they related directly to the individual's ability to pilot boats safely on Board-regulated waters. To conclude that the Board could consider such an incident in deciding whether to grant or renew a license but not as a basis for suspension or revocation defeats the clear statutory intent, which is to ensure at all times that pilots are capable of performing their important functions.
We note that the Board has limited its action to the pilot license and has in no way interfered with the individual's ability to work as a docking master.
We conclude that the Board of Commissioners of Pilots may proceed against the license of a State-licensed Hudson River pilot for actions taken while he was acting as a docking master.
Very truly yours,
DENNIS C. VACCO
Attorney General
[1] The facts related to us are as follows. The ship was scheduled to sail from a terminal in the Port of New York/New Jersey to sea on January 12, 1994. When the board-licensed pilot arrived, he discovered that the ship's draft was several feet greater than he had expected. The pilot advised the ship's captain that he believed the ship was too deep to sail safely at that time and stage of the tide. A dispute with the docking master followed. The docking master convinced the captain that it was safe to sail. The pilot insisted that the docking master keep a tug in attendance due to his safety concerns. After the ship left the terminal, the captain observed that the fathometer showed no clearance beneath the ship, which continued to sail at slow speed with the tug in attendance until it arrived at Red Bank Reach. A second pilot who was observing the departure for training purposes informed the Board that the ship appeared to be making contact with mud or sand in the channel bottom.